**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ANDREW A. SAPP,**

      **Plaintiff,**

**vs.**                              **Case No. 4:10cv420-RH/WCS**

**STATE OF FLORIDA
DISBURSEMENT UNIT,**

      **Defendant.**

_____/

**ORDER and REPORT AND RECOMMENDATION**

Plaintiff, proceeding *pro se*, initiated this case in the Middle District of Florida on September 23, 2010. Doc. 1. It has been transferred to this Court. Plaintiff submitted a motion seeking leave to proceed *in forma pauperis*. Doc. 2. Good cause having been shown, the motion is granted. The Clerk of Court shall file the complaint without requiring payment of the filing fee.

Plaintiff's complaint has been reviewed. Doc. 1. Plaintiff lives in Philadelphia and Defendant is the State of Florida "Disbursement Unit" Tallahassee, Florida. Doc. 1. Plaintiff asserts in the complaint this case is brought pursuant to the Court's Diversity of Citizenship jurisdiction. *Id.*, at 2. However, Plaintiff asserts that Defendant has violated

his "civil and human rights" and claims he has been injured in the manner in which funds have been taken from his account. Doc.1.

The following facts are inferred, but are not entirely clear from Plaintiff's allegations. It would appear that at some unknown date, Plaintiff was ordered to pay child support. Most likely Plaintiff failed to pay some of that child support, and an arrest warrant was issued by the State of Florida. The date is unknown. Plaintiff moved out of the State of Florida at some unknown time. Plaintiff asserts that he cannot afford to make the payments as ordered. Plaintiff claims if he opens any type of bank account, the State of Florida finds his account and takes his money. Plaintiff contends that he "will object to any report and recommendation . . . that does not adopt and incorporates [sic] some type of relief . . . ." *Id.* Defendant is the State of Florida "Disbursement Unit." Doc. 1.

The Eleventh Amendment bars suit in federal court against an "arm of the state" unless such immunity is waived by the state or has been abrogated by Congress. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). Neither situation has occurred. Plaintiff's claim for relief against the State of Florida, or any agency thereof, is barred by the Eleventh Amendment.

Moreover, federal courts have "traditionally refrained from exercising authority over matters broadly described as 'domestic relations.' " U.S. v. Kegel, 916 F. Supp. 1233, 1235 (M.D. Fla., 1996), *citing* Barber v. Barber,[1] 62 U.S. (21 How.) 582, 584, 16 L. Ed. 226 (1858); Simms v. Simms, 175 U.S. 162, 20 S. Ct. 58, 44 L. Ed. 115 (1898).

---

[1] In Barber, the wife (who lived in New York) filed a federal suit in Wisconsin against her husband, who lived in Wisconsin, seeking to enforce a New York state court decree concerning alimony. 62 U.S. at 584.

The authority for invoking the "domestic relations" exception originally stemmed from

Barber v. Barber, 21 How. 582, 16 L. Ed. 226 (1859) in which the Supreme Court

stated, albeit in dicta, "that the federal courts have no jurisdiction over suits for divorce

or the allowance of alimony." Ankenbrandt v. Richards, 504 U.S. 689, 112 S. Ct. 2206,

2209, 119 L. Ed. 2d 468 (1992), *explaining* Barber, 21 How. 582. Although the

Constitution itself did not exclude domestic relations cases from federal court

jurisdiction, the exception exists nonetheless as a matter of statutory construction.

Ankenbrandt v. Richards, 504 U.S. 689, 112 S. Ct. 2206, 2213. The exception rests on

the statutory requirements for diversity jurisdiction. *See* De la Rama v. De la Rama,

201 U.S. 303, 307, 26 S. Ct. 485, 486, 50 L. Ed. 765 (1906), *quoted in* Ankenbrandt,

112 S. Ct. at 2211 (finding that a "husband and wife cannot usually be citizens of

different States, so long as the marriage relation continues (a rule which has been

somewhat relaxed in recent cases), and for the further reason that a suit for divorce in

itself involves no pecuniary value.").

Even though Barber "did not intend to strip the federal courts of authority to hear

cases arising from the domestic relations of persons unless they seek the granting or

modification of a divorce or alimony decree," the Supreme Court has "expanded the

domestic relations exception to include decrees in child custody cases." Ankenbrandt,

112 S. Ct. at 2214; In re Burrus, 136 U.S. 586, 594, 10 S. Ct. 850, 853, 34 L. Ed. 500

(1890). In Burrus, the issue was a child-custody dispute in which the father sought to

have the child removed from her grandparents care and given to him. When the

grandfather refused to give up the child, he was arrested and taken to jail. The

grandfather sought habeas relief and claimed he was illegally imprisoned because the

father was wrongfully given custody.  The Supreme Court held that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."  <u>Burrus</u>, 136 U.S. at 593-594.

The <u>Ankenbrandt</u> Court reaffirmed these earlier cases by concluding:

> . . . that the domestic relations exception, as articulated by this Court since <u>Barber</u>, divests the federal courts of power to issue divorce, alimony, and child custody decrees.  Given the long passage of time without any expression of congressional dissatisfaction, we have no trouble today reaffirming the validity of the exception as it pertains to divorce and alimony decrees and child custody orders.

<u>Ankenbrandt</u>, 112 S. Ct. at 2215.

Even prior to <u>Ankenbrandt</u>, courts have ruled that the federal courts lack subject matter jurisdiction in domestic relations cases.  For example, in <u>Solomon v. Solomon</u>, 516 F.2d 1018 (1975), Pennsylvania residents executed a marital separation agreement which provided for monthly alimony payments by the husband to the wife.  The wife eventually filed a complaint in a federal district court alleging diversity of citizenship and complaining that the husband had defaulted on payments due under the separation agreement.  The wife sought monetary damages for the husband's failure to make the monthly support payments and enforcement of the agreement.  The husband admitted he had not made the payments as due under the agreement, but asserted as an affirmative defense that the wife had breached the agreement by not allowing him visitation privileges rights he was due under the Agreement.  On appeal, the Circuit Court affirmed the dismissal and concluded that the district court lacked subject matter jurisdiction over the complaint of the wife because of the long-standing domestic relations exception to federal court jurisdiction.  516 F.2d at 1026.

These types of cases no longer rest on the non-diversity of the parties (although it is presumed for present purposes that in this case there is diversity), but on the understanding that state courts have historically decided these cases and have developed expertise in the matter and an interest in overseeing future issues that may arise. *See, e.g.,* Stevens v. Sley, 407 F.Supp. 140, 144 (D.C. Pa. 1976). This is a matter for the state court to decide.

Although Plaintiff is pursuing relief against an agency of the State of Florida, it does not save this case from the domestic relations bar.[2] It is evident that Plaintiff's claims fit securely within the "domestic relations exception," even though Plaintiff is naming parties other than his ex-wife as Defendants. What Plaintiff seeks as relief is an injunctive order to stop child support payments or reduce the amount of those payments consistent with his ability to pay. Such an order would contravene an order from a Florida court which, apparently, established the child support award. This Court lacks subject matter jurisdiction to modify or terminate such an order. If Plaintiff is entitled to any such relief, it must come from the state court which issued the order.

---

[2] It does not appear from Plaintiff's allegations that there are conflicting court orders from two different states, both of whom have asserted jurisdiction to render contrary custody determinations. If that were the case, Plaintiff might have an avenue of redress in this Court. *See* Heartfield v. Heartfield, 749 F.2d 1138 (5th Cir. 1985) (finding that "where courts of two different states assert jurisdiction over a custody determination, federal district court intervention is proper and in fact necessary to enforce compliance with § 1738A."). In other words, the "domestic relations exception" does not apply where the complaint otherwise makes out a substantial case for federal question jurisdiction. Flood v. Braaten, 727 F.2d 303, 307 (3d Cir. 1984). *See also* McDougald v. Jenson, 786 F.2d 1465 (11th Cir. 1986).

## ORDER

Accordingly, it is **ORDERED** that Plaintiff's *in forma pauperis* motion, doc. 2, is **GRANTED** and the Clerk of Court shall file this action without requiring payment of the filing fee for this civil case.

## REPORT AND RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's complaint, doc. 1, be **DISMISSED** for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

**IN CHAMBERS** at Tallahassee, Florida, on October 4, 2010.


 s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**